Ma'am Clerk, please call the last case of the morning. 116-03-59, Workers' Compensation Comm'n, 15 O'Rourke.  May it please the Court, Cardinal Corey on behalf of the Appellate Plaintiff Personnel Staffing Group, LLC. Good morning, Justices. Good morning, Mr. Casinos. Your Honors, Justices, the Circuit Court affirmed the Commission's ruling, finding that even though defendant, Mr. Alvarado, was not a permanent, medical permanent total disabled, he was a odd lot, PTD, Justices, if it's all right if I say PTD rather than going on to say permanent total disabled. We believe that that was against the manifest weight of the evidence. The Circuit adopted the Commission's findings, so we believe that was also against the manifest weight of the evidence and should be reversed. There's two issues before this Honorable Court. The first issue has to do with the burden that the defendant had under the odd lot category. There's two ways to be found to have an odd lot PTD. The first one is not It is undisputed that that's not an issue. The only issue before this Court was whether or not the defendant met his burden by preponderance of the evidence that he was unemployable based on his age, skills, training, and work history. And on that element, that's what the Commission found based upon the opinion expressed in the vocomotive vocational report that because of her skills, age, and training, she was not going to be employable in a well-known market. That's what they found, right? Yes, Your Honor. So why can't the Commission rely on that vocational report? Thank you, Your Honor. If you combine the vocomotive report with the Corvall report, first of all, the vocomotive report, the counselor, investigator, relied on a misstatement of the evidence. She said that Mr. Alvarado was unable to converse in English. At arbitration, he testified that he was able to communicate, to converse in English. So therefore, she did a very limited search of any jobs where English-speaking at all was necessary. In addition, if you look at the vocomotive report, she called only eight possible employers. In food prep, which was, Your Honor, the reason I said we were looking at the vocomotive report, Corvall also says food prep is a possible job. In vocomotive, she calls only two food prep employers and then concludes it's not going to work out because of his language and because of his physical capabilities. It's not within his restrictions. However, Corvall, which the Commission misstated the evidence, said has absolutely no jobs within his restrictions or his language or his skills. And that's not true. We listed six of the food prep jobs. And here's the dilemma that I'm having, and your argument has some, you know, intuitive appeal, but we have a situation where, in essence, you are asking us to reweigh the evidence. You are, to be very blunt, asking us to find that Corvall's voc report was of the law do we do this? How do we adapt one voc report over another? I'd like to know how we can do this. There's great deference to the Commission on the weight of evidence. And that is the hurdle, isn't it? And the way I'm attempting to get around that hurdle, with all due respect, Your Honor, is that vocomotive, she relied on evidence that did not exist, or she was misled on evidence when the defendant told her that he did not converse in English. Okay. So you hinge upon, as I would if I were you, you know, a certain part of that, that he doesn't, you know, certainly he spoke English, correct? Yes. Okay. But doesn't it go deeper than that? Some of the positions require, quote, unquote, good English skills in more than just the spoken word. I mean, somebody may be able to speak English and may be not adept at doing a job that requires all of the skills that stem from that. Correct? Correct. So, and that's what the Commission seemed to say. They were saying that Corvell really, you know, some of the jobs required good English skills, transferable skills that he didn't possess. If you combine the vocomotive with Corvell, though, Corvell then calls more potential employers and finds at least six positions where that limited English would not be a factor. Which was, of course, I'm assuming argued before the Commission. Yes, but the Commission wrongfully misstated the evidence as there is, and they state this in their ruling, there's absolutely no jobs that out of the 31 employers they called, none of them are, will satisfy his conditions, his language, his skills. That's the misstatement of evidence, which I believe gets me around. Why do you say that that's a misstatement of evidence? We show, Your Honor, six of them from the reports that are within the restrictions. That's not what the arbitrator found. Found that the claimant's educational language and physical virtues disqualified him from employment in the food preparation, telemarketing, inspecting, occupational fields. And concluded, therefore, there was no stable labor market. Did you come up with jobs outside of those fields? I based it on the Commission's interpretation of the Corbell report. That's where I say they misstate the evidence. The arbitrator, I read the arbitration, but I don't remember. I know the Commission specifically said, and I can read from the ruling where they said Corbell should be given 30-year wait because there's absolutely no jobs that they list  Well, that's actually what the arbitrator said. And therefore, the arbitrator also misstated the evidence. A review of the evidence, which is the Corbell report, shows there are six. Wait a minute. They didn't believe the Corbell report. You can't say I get to rely on the Corbell report. They were wrong to discount the Corbell report because the Corbell report states. I mean, that's circular logic. They discounted the Corbell report. They said we're not going to follow it because we find that because of his educational language, physical barriers disqualified him from any employment in the food preparation, telemarketing, and inspecting the occupational fields. Was there any evidence that you provided jobs outside of any of those fields? Of all of those fields? My argument is that as far as the food prep, Your Honor, they misinterpreted the report. No, no, they misinterpreted. You're arguing that they're wrong because the Corbell report says they're wrong. That's what your argument is. No, Your Honor, I'm saying that they concluded based on their review of the Corbell report that because of his physical limitations, his language, his skills, there is nothing, no labor market at all. There's no jobs listed in the Corbell report. I'm saying, Your Honor, that was against the evidence. As the evidence clearly states, there's six jobs that are within those exact limitations, skill, and language requirements. So I'm saying they misinterpreted the evidence, not that they shouldn't have given the weight to that report or no weight to that report. I'm saying they misinterpreted the evidence, which makes their interpretation of the evidence incorrect. To move on, the Corbell also called 31 employers and found those six jobs, whereas Volcomotive called only eight. Then also Volcomotive's report stated that if he wasn't working on the right demand, which was what Dr. Gottlieb ordered, either sedentary or like demand, probably like demand, he would not be able to get any of those jobs because he would need accommodations. The jobs listed in the Corbell report all say standing, parents, accommodations if needed. One of them even says sedentary. So there were jobs. But, Your Honor, just as it takes me to the second part, which I think is even more important on this factor, the commission and the arbitrator did not consider at this, before the burden shifted to the plaintiff, they did not consider what I think is the most important evidence, that he was not only employable. Mr. Abiraghi was employed. He worked for five months at Plaintiff's Cicero office, at a job within his restrictions based on Dr. Ghanayim's IME, which the commission said controlled. The commission said the FCE was invalid, and Dr. Lornenz's opinion was based on an invalid FCE. So not only does the law clearly state it's a high burden, this outlaw, it says that if you can have any job at all, which results in a payment of wages, you are not outlawed. Mr. Abiraghi worked for five months at Plaintiff's Cicero office, within his restrictions. I believe right there that evidence alone, it shows a concern. So what was that job? The bathroom monitor, Your Honor. What? Bathroom monitor. Okay, so bathroom monitor, is that a well-known branch of the labor market? If you say a monitor position, it's similar to like a... You said it's bathroom monitor. I'm not exactly sure what that entails. What does that entail? To wash the washrooms, make sure they're clean, make sure they're safe, no one goes in there and slips and falls. Is that a well-known branch of the labor market? I do not know. I have not looked it up. Oh, is that part of the test? I think it is based on the fact, based on the testimony in this case, Your Honor. There was a bathroom monitor position at a company called Senerdal, full-time position that was offered first for Mr. Abiraghi. Which, once again, the commission misstates the office. Well, let's assume that there's one company in a given area that has that. That's my question. Is it a well-known branch? You could have somebody employed doing anything. It doesn't mean that it's a well-known job in the industry, correct? I believe it is, based on the fact that the testimony of the Plano Safety Coordinator said he gave seven companies that had the monitor position and said there was always requests coming in from their client companies. So an inference can be made that that is a job that is in the labor market. Not maybe specifically bathroom, but the generic is monitoring. Whether it be in a cafeteria or in a parking lot is really what we're talking about, aren't we? It would fall under the umbrella of a monitor. The Senerdal job offer, the first job offer, undisputed full-time job offer, was a bathroom and break room monitor. So I think there is, in the labor market, a real position for a monitor which encompasses bathroom, break rooms. Does the person have to stand or sit? Because we're going to get into that, because according to the medical evidence, arguments he couldn't stand for any period of time, correct? Yes, Your Honor, and the testimony is that when he worked at the Cicero office and he did complain about certain chores, such as the sweeping of stuff and everything, they accommodated him. At the end, it was a sedentary position. So even if, in my opinion, the irrelevant evidence about a supposed injury is backing him out, he still could have performed within his restrictions the Cicero office job. So he sits there in an easy chair and watches the bathroom. Not only that, Your Honor, based on Dr. Ghanaian, he is allowed to stand up and sit down and walk around. I want to back up to something else you said. What did you say the commission did that was in the air when it interpreted the report that you submitted? Your Honor, my testimony was that they stated, and I could read it, that there was no positions listed on Corvell within... Really? You want me to read it to you? Respondent introduced into the evidence a labor market survey by Corvell dated May 12, 2014. The vocational case manager reviewed the FCE report and the reports for Dr. Ghanaian, but did not meet with the petitioner. The vocational case manager opined petitioner could work in the areas of food preparation, telemarketing, and inspection. She was evidently unaware of petitioner's lack of secondary education, transferable skills, and English language skills. On the next page, the commission went through what the rules were, attended to the award of ADLAT permanent total under the second element, and says the commission gives little weight to the labor market survey of Corvell because the positions listed in Corvell's labor market survey required good English skills, transferable skills petitioner did not possess, or exceeded the petitioner's physical abilities per Dr. Ghanaian. You want to point out where it says what you said it says? That last sentence, Your Honor, is what I was stressing. You weren't stressing that. That's not what you said. You told us that they made an error. Yes. Where's the error? They gave little weight to Corvell because... You told us they made a factual error. Point it out to me. The factual error is that Corvell's labor market survey did not list positions that were outside the scope of what they listed. Where does it say that? It specifically says... It says we give little weight because the positions listed required good English skills, the transferable skills petitioner did not possess, or exceeded the petitioner's physical abilities per Ghanaian. So they're saying there's no positions listed within his ability restrictions and everything. Yes. And who says there is? And who says there is? Corvell? If I read the Corvell summary of each position, the six I took out... We're back to the circular illogic of your argument. The commission's decision that Corvell's report is given little weight because of what the Corvell report says. That's exactly what your argument is. It's circular and it's illogical. Point to some evidence outside of the Corvell report that suggests that this man could perform in any one of these areas. Your Honor... Is there any? I respectfully disagree. You can disagree all you want. I asked you a question. Yes. The Corvell report... Where's the other one? The Corvell report... No. Sir. Sir. Sir. Let's try it real simply. Your Honor, I'm not understanding what you're asking. Point to something in the record other than the Corvell report that suggests that this man could perform in food processing... What else did they want? Food preparation, telemarketing, and expecting occupational fields. The last IME, the last medical record in the record, medical evidence, Dr. John IME, says he could work sedentary, probably like demand, with the ability to stand up, sit down, and walk around. Food prepositions that I highlighted, the six of them, I believe fall within those restrictions, Your Honor. They very well fall within his medical restrictions, but do they fall within his lack... Are they not considered, according to the commission, because he lacked secondary education, transferable skills, and English language skills? They never said it fell outside of his medical restrictions. The Corvell report, which I know you don't want me to go to, but there is the evidence, Your Honor. Okay, you'll have time in reply. You've run over a little bit. I've let you run over, but you'll have time in reply and can respond to that. Yes. Counsel, you may respond. Good morning, Your Honors. Counsel, may it please the Court. My name is Mario Encinas, and I represent the appellant, Felipe Alvarado, in this case. We believe that there was sufficient evidence in the record to support the commission's finding of an odd-lot firm toll, and that that shifted the burden to the employer to show that the employee was employable and that a stable labor market existed. And we believe that the commission was correct in finding that they did not meet their burden. We understand what you believe. Would you tell us why you believe that? Yes, Judge. The court found, based on employee's evidence, that he was an odd-lot firm result. Based on, first, his age. He was 56 years old, and that's in the record. His education. He only had six years of education in Mexico. His training. Did not have any training, neither in Mexico nor here. Didn't hold any certificates of any kind. His work history included 25 years in the United States of unskilled labor at different levels, light, medium duty, and full duty. His language. Now, the employee did say he does speak and understand some English, but it's not his first language, and nor does he write or read in English. And there was no testimony of the contrary regarding his language skills. So that, taken in together with the vocational assessment, which also takes into account employer's section 12 doctor, Dr. Ganiyam. Dr. Ganiyam is the one who sets the restrictions in this case. He said sedentary duty, most likely light duty, with the ability to alternate between sitting, standing, and moving around. Now, there's sufficient evidence to support that finding based on what you said, but he spent a great deal of time opining that the commission misinterpreted the evidence. That was the central theme in his distinguishing between the two voc rehab reports. So how do you respond directly to his argument? You heard it there for 15 minutes, that the commission misinterpreted the evidence. If you don't agree with that, why is that inaccurate? I don't think that's accurate because there was sufficient evidence to support the commission's finding. They heard all the evidence. They made certain inferences, and their ultimate conclusion was that the petitioner, the employee, proved beyond a reasonable doubt. And that was the standard here was a preponderance of the evidence. They like to think that it was a high standard, but it wasn't. It was a preponderance of the evidence, and we believe that the employee met that burden. There seems to be a debate here as to exactly what the commission found. I don't seem to be making myself quite understood here, so I'll try it again simply. Did the commission find that this man did not possess either the English language skills, transferable skills, or physical abilities per Dr. Geheim to perform in the work areas identified by the respondent's vocational report? Yes. Is that what they found? Yes, that's what the commission found. Okay. But he then goes on to say they also, Corvell identified certain jobs that would have accommodated his language skills and his standards. You heard him say that, correct? Correct. Do you agree with that? We do not agree with that. They argued that maybe they weren't understanding the level of English language that the petitioner possessed, but that was not the testimony. The testimony was that, yes, he does. He's been here 25 years. He does speak and understand some English, but, however, it's not his first language. He doesn't read it, and he doesn't write it. It doesn't rise to that level where he would need to have, possibly have a conversation with someone in those type of positions. I'm back to where I'm, it must be mistaken. I understood your opponent to say that the commission somehow found that the respondent did not introduce evidence of the availability of jobs in either the food preparation, telemarketing, or inspection areas. That's how I understood his argument, and I went after him for it because I suggested that was not what the commission found. The commission understood it, understood what they were saying, but turned around and said that because of the man's lack of good English, transferable skills, or his physical abilities, he could not fulfill any of the jobs that the Corbell report suggested were available. I want to be clear that that's exactly what occurred here. Judge, we would agree with you. And that report, the Corbell report, along with the employee's report were taken into account, and those jobs were available. I believe even the employee's report indicated cashier and food service prep as possible jobs, but because of these other circumstances, he was not, he could not fulfill those job positions. Okay. Moving on to the labor market survey, a lot of the argument has been made that the employee actually did hold a job. He was offered a job by the employer and did work for five months. I believe this should go in the employee's favor. He did try the job. Because of necessity, his benefits were cut off, and he did do the work for five months. He did have a lot of problems. He did have problems taking the bus. He did have pain. He fell twice while he was walking. Had he not gone, they'd be arguing that he didn't even go and he didn't even try, so I think that works in his favor. And all the other jobs that were offered to him by the employer were employer's jobs. They were all under the control of the employer. All those companies, all their clients, of course they're going to be able to find them jobs. But nothing outside of that, of the jobs that were controlled by the employer, would the petitioner be able to work again. Now, based on all, we believe that there's sufficient evidence in the record to support the commission's finding that the petitioner by preponderance of the evidence that he was an out-of-law firm total that shifted the burden to the employer, and the employer was not able to show that there was a stable job market for the petitioner or that one existed. Thank you, Counsel. Counsel, you may reply. Thank you, Justices. I just wanted to jump back into what I think is, in addition to the corral misinterpretation of that report, the job offer, offers, multiple offers, three job offers, one full time, automatically take the defendant outside the odd-lot category. The law is clear that as long as the job justifies payment of wages and does not endanger the life and health of the defendant, they are not odd-lot. In addition, Your Honors, What did the commission find as to why they didn't consider these three job offers as satisfying the burden? My interpretation of the commission's ruling is they did not consider it on the first, on the burden of the defendant, and then when the burden went to the plaintiff, they considered it and they You want me to read it to you? Yes. Yeah. Turning to the respondent's job offers, petitioner, of three similar part-time monitor positions, the commission finds these job offers do not truly reflect the petitioner's long-term employment prospects in a competitive labor market. The commission further notes petitioner's testimony about his persistent symptoms, long and difficult commute to respondent's office, and that he quit working because his back gave out. The commission, therefore, awards odd-lot permanent total disability benefits. Yes, Your Honor. Justice, the, they misstate the evidence. There is not an offer of three part-time jobs. The first, undisputed, the first job, the testimony of the defendant states that, sorry, the third job, the defendant of the testimony states, I didn't want it because it was full-time. The first job, the Segredal job, the evidence is the exhibit from plaintiff's attorney to defendant's attorney showing it's a full-time job at Segredal. No objection to that evidence. It's an email. So, so, so it misstates this. So I want to understand something. Because they misstated whether it was full-time or part-time, that renders irrelevant the question of whether he could physically perform it. In response to the physical requirements that which the circuit court brings up, Dr. Ghani Yeem is the last medical record, medical evidence in the record. The unsubstantiated, undocumented testimony of the defendant that he threw out his back should not have been considered and is irrelevant. Why? Because it is, he testified, I throw my back, no. He didn't give specifics. Was it a new injury? Was it an aggravation of the original injury? If the commission knew that, they either found him credible or they didn't. But if they gave credibility to that, it was wrongful because the only medical evidence is, Dr. Ghani Yeem is the last medical evidence. Says he can do sedentary work. Sedentary, probability of life demand. And that's what those jobs were. He worked there for five months and then he voluntarily quit. Can I interject what I think is your position? You are saying in so many words here this morning that the commission made findings and conclusions that were not supported by the evidence in your opinion, correct? Yes, Your Honor. Okay. Based on misinterpreting, misreading evidence. However they did that, there was no evidence to support many of their conclusions, right? Yes, Your Honor. I get it. Okay. May I ask you a question that does go to the merits of the appeal here, though? In terms of the appendix, did you include the entire commission's record in the appendix to your brief? My understanding is we attached everything, Your Honor. I did not do it myself, so I cannot testify directly. But you know you should, though, obviously. We attached the entire record, I believe. And read Rule 342 because it tells you what you should include and more to the point what not to include. And, you know, this is overkill to several degrees. I won't do that again. I apologize, Your Honor. Thank you. Your Honor, just to sum up, we ask you to reverse the District Court's affirmation of the commission's finding that this was an outright PTD. Thank you for your time. Thank you, Counsel. Both of the arguments in this matter will be taken under advisement. The written disposition shall issue. The Court will stand in recess until 1.30 this afternoon.